IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TOREY PIRTLE | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | |
| | § | NO. 3-07-CV-0811-M |
| NATHANIEL QUARTERMAN, Director | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division | § | |
| | § | |
| Respondent. | § | |

**FINDINGS AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Petitioner Torey Pirtle, a Texas prisoner, has filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated herein, the application should be denied.

I.

A jury convicted petitioner of capital murder by intentionally causing the death of Johnny Barrett while in the course of committing or attempting to commit robbery. Because the state did not seek the death penalty, punishment was automatically assessed at life imprisonment. Petitioner appealed his conviction and sentence. The state appeals court affirmed in an unpublished opinion. *Pirtle v. State*, No. 05-02-00312-CR, 2003 WL 21350074 (Tex. App.--Dallas, Jun. 9, 2003, pet. ref'd.). Petitioner also filed an application for state post-conviction relief. The application was denied without written order on the findings of the trial court. *Ex parte Pirtle*, No. 60,357-01 (Tex. Crim. App. Jan. 10, 2007). Petitioner then filed this action in federal district court.

II.

Petitioner raises three broad issues in eight grounds for relief. Succinctly stated, petitioner contends that: (1) the jury charge was defective; (2) his conviction was tainted by jury misconduct; and (3) he received ineffective assistance of counsel at trial and on appeal.

A.

The standard of review in federal habeas cases is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* Pub.L. 104-132, 110 Stat. 1214 (1996). Where, as here, a state court has already rejected the claims raised by petitioner, a federal court may grant habeas relief only if the state court adjudication:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 411-13, 120 S.Ct. 1495, 1522-24, 146 L.Ed.2d 389 (2000). Federal habeas courts review questions of law and mixed questions of law and fact under section 2254(d)(1). Pure questions of fact are reviewed under section 2254(d)(2). *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir.), *cert. denied*, 122 S.Ct. 194 (2001).

A state court decision is contrary to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir.), *cert. denied*, 124 S.Ct. 2812 (2004), *citing Williams*, 120 S.Ct. at 1523. A decision constitutes an "unreasonable application" of clearly established federal law if "the state court

identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 120 S.Ct. at 1523. To be unreasonable, the application of clearly established federal law must be more than merely incorrect. *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). The standard is one of "objective reasonableness." *Montoya v. Johnson*, 226 F.3d 399, 403-04 (5th Cir. 2000), *cert. denied*, 121 S.Ct. 2220 (2001), *quoting Williams*, 120 S.Ct. at 1521-22 (O'Connor, J., concurring). Factual determinations made by state courts are presumed to be correct and are unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

B.

In a single ground for relief, petitioner complains that the jury was not instructed on the lesser-included offense of murder and the culpable mental states for the underlying offense of robbery.

1.

Improper jury instructions in state criminal trials rarely justify federal habeas relief. *See Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002). In examining such a claim, the "inquiry is not whether there was prejudice to the [petitioner], or whether state law was violated, but whether there was prejudice of constitutional magnitude." *Id.*, *quoting Sullivan v. Blackburn*, 804 F.2d 885, 887 (5th Cir. 1986), *cert. denied*, 107 S.Ct. 1901 (1987). This, in turn, requires the petitioner to prove that the erroneous instruction "by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 764-65, *quoting Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct 396, 400, 38 L.Ed.2d 368 (1973). Moreover, there is a strong presumption that errors in jury instructions are subject to a harmless error analysis. *Id.* at 765. A constitutional error is harmless unless it "had

a substantial and injurious effect or influence in determining the jury's verdict." *Id.*, *quoting Brecht v. Abrahamson*, 507 U.S. 619, 623, 113 S.Ct. 1710, 1714, 123 L.Ed.2d 353 (1993).

2.

The court initially observes that the failure to instruct a jury on a lesser-included offense in a non-capital case does not implicate a federal constitutional right. *See Valles v. Lynaugh*, 835 F.2d 126, 127 (5th Cir. 1988); *Alexander v. McCotter*, 775 F.2d 595, 601 (5th Cir. 1985). The same is true in a capital case where the defendant is sentenced to life imprisonment rather than death. *See Creel v. Johnson*, 162 F.3d 385, 390-91 (5th Cir. 1998), *cert. denied*, 119 S.Ct. 2027 (1999) (federal due process concerns, that a defendant should not be sentenced to death automatically if a jury cannot convict on a lesser offense, are absent in cases in which the death penalty is not ultimately imposed). Because petitioner has failed to raise a federal constitutional issue, he is not entitled to habeas relief on this ground.

3.

Petitioner further contends that the jury charge was defective because it did not define the culpable mental states for the underlying offense of robbery. It is a fundamental concept of criminal law that a person cannot be convicted of a crime unless the act, or *actus reus*, is accompanied by a criminal mind, or *mens rea*. *See Morissette v. United States*, 342 U.S. 246, 250-52, 72 S.Ct. 240, 243-44, 96 L.Ed. 288 (1952). Under Texas law, a person must act either intentionally, knowingly, recklessly, or with criminal negligence in order to give rise to criminal liability. *See* TEX. PENAL CODE ANN. § 6.03 (Vernon 2003). Texas courts have further recognized that the scope of those culpable mental states is limited by the "conduct elements" of the offense. *See McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989). In *McQueen*, the Texas Court of Criminal Appeals stated:

> [The Texas Penal Code] delineates three "conduct elements" which may be involved in an offense: (1) the nature of the conduct; (2) the result of the conduct; and (3) the circumstances surrounding the conduct . . . An offense may contain any one or more of these "conduct elements" which alone or in combination form the overall behavior which the Legislature has intended to criminalize, and it is those essential "conduct elements" to which a culpable mental state must apply.

*Id.* The court went on to explain that conduct made criminal because of its result requires culpability as to that result. On the other hand, where specific acts are criminalized because of their very nature, the culpable mental state must apply to committing the act itself. Where otherwise innocent behavior becomes criminal because of the circumstances under which it is done, a culpable mental state is required as to those surrounding circumstances. *Id.*; *see also Lugo-Lugo v. State*, 650 S.W.2d 72, 74 (Tex. Crim. App. 1983).

Here, petitioner was charged with capital murder by "intentionally caus[ing] the death of Johnny Barrett" while "in the course of committing and attempting to commit the offense of robbery[.]" (St. App. Tr. at 2). Murder is a "result of the conduct" offense because culpability lies in intending to kill the victim, regardless of how the killing occurred. *See Martinez v. State*, 763 S.W.2d 413, 419 (Tex. Crim. App. 1988). However, the offense of robbery, which elevated the murder to capital murder, involves all three conduct elements. *See Ash v. State*, 930 S.W.2d 192, 195 (Tex. App.--Dallas 1996, no pet.).[1] In the abstract portion of the charge, the trial court instructed the jury that:

---

[1] Under Texas law, the "conduct elements" of robbery are: (1) threatening or placing another in fear of imminent bodily injury or death; (2) engaging in such conduct while in the course of committing theft; and (3) unlawfully appropriating the property of another. *See* TEX. PENAL CODE ANN. §§ 29.02(a) & 31.03(a) (Vernon 2003). The first element refers to the result of the conduct. The second element refers to the circumstances surrounding the conduct. The third element refers to the nature of the conduct. Thus, robbery involves all three conduct elements. *See Ash*, 930 S.W.2d at 195.

> Our law provides that a person commits the offense of murder when he intentionally causes the death of an individual. A person commits the offense of capital murder when the person commits murder, as defined above, during the course of committing or attempting to commit the offense of robbery.
>
> Our law provides that a person commits the offense of robbery if, in the course of committing theft . . ., and with the intent to obtain and maintain control of property of another, he intentionally or knowingly threatens or causes bodily injury to another.

(St. App. Tr. at 17). The jury was further instructed that "[a] person acts intentionally, or with intent, with respect to the result of his conduct when it is his conscious objective or desire to cause the result." (*Id.* at 19). Finally, the application portion of the charge reads:

> Now, bearing in mind the foregoing instructions, if you find and believe from the evidence beyond a reasonable doubt that the defendant [ ], on or about the 5th day of April, A.D., 2001, in the Dallas County, Texas, either acting alone or as a party, by soliciting, encouraging, directing, aiding or attempting to aid another, did unlawfully, then and there *intentionally cause the death of Johnny Barrett*, an individual, hereinafter called deceased, by shooting the said deceased with a firearm, a deadly weapon, and the defendant, either acting alone or as a party, was then and there in the course of committing or attempting to commit the offense of robbery of said deceased, then you will find the defendant guilty of the offense of capital murder, as charged in the indictment.

(*Id.* at 23) (emphasis added). Although the jury charge properly defines the culpable mental state of "intentionally" and limits that definition to the conduct element for murder, the application portion of the charge is silent as to any culpable mental state required for the underlying offense of robbery. Petitioner maintains that this omission amounts to constitutional error.

Assuming the jury charge was defective,[2] the court determines that this error was harmless. The application portion of the charge instructs the jury that they may convict petitioner of capital murder only if the state proves beyond a reasonable doubt that he intentionally caused the death of the victim by shooting him with a firearm in the course of committing or attempting to commit the offense of robbery. (St. App. Tr. at 23). Elsewhere in the charge, the jury was instructed that "a person commits the offense of robbery if, in the course of committing theft . . ., and with the intent to obtain and maintain control of property of another, he intentionally or knowingly threatens or causes bodily injury to another." (*Id.* at 17). When these instructions are considered together, it is clear which conduct element applies to the offense of murder and which conduct elements apply to the offense of robbery. The state appeals court reviewed the charge in light of the evidence, but was unable to conclude that petitioner suffered egregious harm by any jury charge error. *Pirtle*, 2003 WL 21350074 at *5. Similarly, on federal habeas review, petitioner has failed to show that any jury charge error "had a substantial and injurious effect or influence in determining the jury's verdict." *Galvan*, 293 F.3d at 765. This ground for relief should be overruled.

C.

Next, petitioner contends that his conviction was tainted by jury misconduct. Among the litany of complaints made by petitioner in this ground for relief are that: (1) the jury was confused by the charge; (2) one juror refused to participate in deliberations; (3) another juror suffered adverse

---

[2] In *Hughes v. State*, 897 S.W.2d 285 (Tex. Crim. App. 1994), *cert. denied*, 115 S.Ct. 1967 (1995), the Texas Court of Criminal Appeals held that it would be error for a jury charge to define all three conduct elements in a capital murder case involving only two of three elements. *Id.* at 295. However, no court has held that the application portion of the charge must limit the definitions of the culpable mental states to the conduct elements giving rise to the underlying offense. *Cf. Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App.), *cert. denied*, 116 S.Ct. 106 (1995) (jury charge in capital murder case not defective if abstract portion of charge properly defines requisite mental state for underlying offense).

side effects from taking narcotics; (4) a third juror was preoccupied by an upcoming business trip; and (5) the jury was hopelessly deadlocked.

1.

Jury misconduct does not justify federal habeas relief unless it deprived the petitioner of a fair and impartial trial. *See Drew v. Collins*, 964 F.2d 411, 415 (5th Cir. 1992), *cert. denied*, 113 S.Ct. 3044 (1993). A federal court must initially presume that a jury was impartial. *See De La Rosa v. Texas*, 743 F.2d 299, 306 (5th Cir. 1984), *cert. denied*, 105 S.Ct. 1781 (1985). However, a presumption of prejudice arises where a claim of outside influence, such as evidence that was not admitted before the jury, is brought to the attention of the trial court. *See Drew*, 964 F.2d at 415; *see also United States v. Webster*, 750 F.2d 307, 338 (5th Cir. 1984), *cert. denied*, 105 S.Ct. 2340 (1985). Absent allegations of outside influence, a petitioner must demonstrate that jury misconduct prejudiced his constitutional right to a fair trial. *Drew*, 964 F.2d at 415.

2.

In an attempt to show that his conviction was the result of jury misconduct, petitioner points to five notes sent to the trial judge[3] and a colloquy between the judge and a juror during the course of deliberations. One note, file stamped at 3:27 p.m. on Friday, January 25, 2002, approximately five hours after deliberations began, indicated that the jury disagreed on the charge of capital murder and requested "additional information on 'lesser included charges' and how they pertain to our decisions." (St. App. Tr. at 38). The judge responded that the jury had all the law and the evidence in the case. (*Id.* at 39). Less than two hours later, the jury said they were "hung" and that "no one will change their mind." (*Id.* at 40). The judge instructed the jury to continue their deliberations.

---

[3] The jury sent out two other notes asking for portions of certain trial testimony. (*See* St. App. Tr. at 27-30, 31-37).

(*Id.* at 41). Upon receipt of this response, the jury sent out a third note asking, "What do we do if we have a juror who is reading her book, lying her head back with her eyes closed and or refusing to discuss the case?" (*Id.* at 42). The judge again responded that the jury should continue their deliberations. (*Id.* at 43). At 7:35 p.m., the judge questioned a juror in open court about his upcoming business trip:

>Q: [BY THE COURT]. It is my recollection that you are leaving town?
>
>A: [BY JUROR]. Yes.
>
>Q: When.
>
>A: Sunday.
>
>Q: Where are you going?
>
>A: Cancun. It's a business trip. But if I had to be back Monday, I could go probably a day late, to Cancun. If we need to come back-- but I'd like to get this thing resolved. We really just have one person that's being real deliberate, and who's hard to work with.
>
>Q: Well, I haven't received anything back from you. Do you think, if you deliberated, that you can--
>
>A: I can tell you that we've made more progress in the last thirty minutes.
>
>Q: And I sense that. I just want to make sure what you're schedule is. So you have the option of holding it over a day?
>
>A: I think.
>
>Q: All right. Why don't you go back. I just wanted to know that. I needed to get that on the record.

(SF-III at 371-72). Later that evening, the jury told the judge that they were making progress and wanted to continue working. (St. App. Tr. at 44). At 10:25 p.m., the jury inquired, "If a juror admits to using morphene [sic] regularly, and the lack of having that drug during prolonged deliberation affects her ability to process information, shouldn't the court be aware?" (*Id.* at 45). Instead of answering the last note, the court adjourned for the weekend and instructed the jury to return on Monday, January 28, 2002. Within hours of returning to court, the jury unanimously found petitioner guilty of capital murder. (SF-III at 374).

Because there is no evidence of any improper outside influence on the jury, petitioner must demonstrate that his constitutional right to a fair trial was prejudiced by jury misconduct. *See Drew*, 964 F.2d at 415. On state habeas review, the court found that "there was no misconduct during the trial" and that petitioner "received a speedy, fair, and impartial trial." *Ex parte Pirtle*, No. 60,357-01, Supp. Tr. at 96, ¶ 5. That finding is conclusive in a subsequent federal habeas proceeding unless rebutted by clear and convincing evidence. *See Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001), *cert. denied*, 123 S.Ct. 106 (2002) (presumption of correctness applies to both explicit and implicit findings necessary to state court's determination of mixed questions of law and fact). Petitioner has failed to meet this heavy burden. His subjective interpretation of the contents of the jury notes and the colloquy between the judge and one of the jurors does not merit federal habeas relief.

### D.

In multiple grounds for relief, petitioner contends that he received ineffective assistance of counsel because his attorney: (1) interfered with his right to testify; (2) failed to move for a mistrial or request an *in camera* hearing to inquire about jury misconduct; and (3) did not file a motion to

suppress his written statement. Petitioner also criticizes his appellate lawyer for failing to adequately brief his jury charge claim and for not raising a jury misconduct claim on direct appeal.

1.

The Sixth Amendment to the United States Constitution guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding. *See Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980). To prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *Id.*, 104 S.Ct. at 2064. Second, the petitioner must prove that he was prejudiced by his attorney's substandard performance. *Id.* at 2067. Prejudice results when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068; *see also Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993) (habeas petitioner must show that trial result was unreliable or proceeding fundamentally unfair due to deficient performance of counsel).

2.

The court has already determined that any defect in the jury charge was harmless and that there was no evidence of jury misconduct. It is therefore impossible for petitioner to show that he was prejudiced by counsel's failure to effectively argue these claims at trial or on appeal. Nor was counsel ineffective for failing to file a motion to suppress petitioner's written statement. As part of an omnibus pretrial motion, counsel requested "a sub rosa hearing prior to the introduction of any statements allegedly made by the defendant, either orally or in writing, to determine the

voluntariness and admissibility of them, and requests the disclosure of these statements prior to trial." (St. App. Tr. at 9, ¶ VIII). Although it is not clear whether the trial court ever ruled on this motion, the state did not seek to introduce petitioner's written statement. There was nothing for the court to suppress.[4]

That leaves petitioner's claim that counsel interfered with his right to testify. In an affidavit attached to his state writ, petitioner alleged that he explicitly told his attorney, Heath Harris, that he wanted to testify at trial. According to petitioner:

> [Harris] refused to allow me to do so by ig [sic] that I did not need to testify, He could win the case without me test [sic], I did not understand his logic but followed his advice any way, but deep down inside I wanted to testify.

*Ex parte Pirtle*, No. 60,357-01, Tr. at 55. Harris rebutted that assertion in his own affidavit filed with the state habeas court. While agreeing that he advised petitioner not to testify because of inconsistent statements made to the police, Harris insisted that petitioner was aware of his right to testify and voluntarily waived that right. *Id.*, Supp. Tr. at 99. The state habeas court rejected petitioner's claim, finding that Harris "is a trustworthy individual and that the statements made by him in his affidavit are worthy of belief." *Id.*, Supp. Tr. at 95, ¶ 2. Moreover, during the trial, petitioner was questioned extensively outside the presence of the jury about his right to testify:

> Q: [BY COUNSEL]. And now, Mr. Pirtle, we're now here. The State has rested its case-in-chief, and we talked about the evidence that's been presented thus far; is that correct?
>
> A: [BY DEFENDANT]. Yes, sir.

---

[4] At trial, a Dallas police detective testified that petitioner gave two different versions of the events surrounding the robbery and murder. (*See* SF-III at 321-22). Defense counsel objected to that testimony, but his objection was overruled. (*Id.* at 322).

> Q: And you understand you have a right to testify, if you like to.
>
> A: Uh-huh.
>
> Q: You have a right not to testify if you want to.
>
> A: Uh-huh.
>
> Q: You have to speak up. Is that correct?
>
> A: Correct.
>
> Q: At this time, what's your choice, in regards to your right to testify?
>
> A: No, I don't want to testify.
>
> Q: Okay. And are you making that decision both freely and voluntarily?
>
> A: On my own decision.

(SF-III at 338). In cases such as this, where a petitioner voluntarily and intelligently waives his right to testify based on the sound advice of counsel, there is no basis for federal habeas relief. *See Garcia v. United States*, No. EP-04-CA-447-DB, 2007 WL 4234174 at *9 (W.D. Tex. Nov. 28, 2007) (petitioner did not receive ineffective assistance of counsel where he knew of his right to testify, discussed the matter with his attorney, and acquiesced when counsel advised him not to take the stand).

## **RECOMMENDATION**

Petitioner's application for writ of habeas corpus should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party may file written objections to the recommendation within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The failure to file

written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 7, 2008.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE